IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-664

Filed 4 March 2026

Gaston County, No. 19JT000098-350

IN THE MATTER OF: L.B.

Appeal by Respondent-Father from Order entered 10 February 2025 by Judge William A. Anthony in Gaston County District Court. Heard in the Court of Appeals 10 February 2026.

> *Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender Benjamin J. Kull, for Respondent-Appellant Father.*
>
> *J. Edward Yeager, Jr., for Petitioner-Appellee Gaston County Department of Health and Human Services.*
>
> *Matthew D. Wunsche for Guardian ad litem.*

HAMPSON, Judge.

## Factual and Procedural Background

Respondent-Father appeals from an Order terminating his parental rights in Lanya.[1] The Record before us tends to reflect the following:

Shortly after her birth in June 2018, Gaston County Department of Health and Human Services (DHHS) received a report that Lanya had tested positive for

---

[1] Pseudonym agreed upon by the parties.

multiple substances, including marijuana and Xanax. DHHS provided the minor child's Mother with an assessment and Mother began receiving substance abuse treatment shortly thereafter; the case was subsequently closed.[2]

On 8 April 2019, an altercation occurred between Respondent-Father and the minor child's half-sibling while the family was at the Gaston County Courthouse. DHHS filed a petition alleging Lanya was a neglected and dependent juvenile the next day.

At the time the petition was filed, the minor child had been living with her Paternal Grandmother. Paternal Grandmother had charges pending for driving while intoxicated, driving while license revoked, and failing to secure passenger under age 16. Mother's whereabouts were unknown.

DHHS asked Respondent-Father to come up with a safety plan and to provide DHHS with potential alternative caregivers for the juvenile. Respondent-Father provided three potential caregivers: (1) a paternal great aunt and uncle, (2) a maternal uncle, and (3) a family friend. The paternal great aunt and uncle could not care for the minor child, and the maternal uncle was not approved for placement by DHHS. The minor child was placed with the family friend, but she was removed from his care after the family friend allowed Respondent-Father to be alone with the child in violation of the safety plan.

---

[2] Mother is not party to this appeal. Her parental rights in the minor child were terminated in a separate case on 14 January 2022.

On 2 July 2019, the trial court adjudicated Lanya a neglected and dependent juvenile. At the time of the disposition hearing on 9 July 2019, Respondent-Father was in federal custody. The trial court ordered Respondent-Father to comply with a fifteen-part case plan created by DHHS. In the resulting order, the trial court noted Paternal Grandmother had undergone a home study, which had been denied.

In the Initial Permanency Planning Order entered 19 April 2023, the trial court found Respondent-Father had been sentenced on federal drug charges to thirty-three years of incarceration. The trial court also found Respondent-Father had not entered into a case plan with DHHS, provided any support or care for the juvenile, nor responded to DHHS' attempts to contact him. Respondent-Father had not been able to see the juvenile since May 2019 because of his incarceration. Additionally, the trial court found Paternal Grandmother had undergone a second home study, which also had been denied. The trial court found Respondent-Father had not "made significant progress[ ]" and ordered the primary plan for the juvenile to be adoption, with secondary plans of reunification and guardianship.

On 21 April 2023, DHHS filed a Petition alleging grounds existed to terminate Respondent-Father's parental rights in the juvenile under N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(6), and (a)(7). The termination hearing was held on 6 January 2025. Respondent-Father attended by telephone because of his incarceration.

At the hearing, DHHS social worker Kristine Costa (SW Costa) testified Respondent-Father had been arrested shortly after DHHS filed the juvenile petition

in April 2019. She testified Respondent-Father had access to parenting and substance abuse classes while in jail, but those services were limited because of the COVID-19 pandemic. She did not know what services were available to Respondent-Father after he was transferred to federal prison. Additionally, Respondent-Father was not allowed to meet with DHHS because he had a federal hold; however, SW Costa sent Respondent-Father letters and case plans in the mail, to which he did not respond. SW Costa's involvement with the case ceased in April 2022.

DHHS social worker Weesue Tubman (SW Tubman) assumed the case in October 2022, after Respondent-Father had been transferred to federal custody. SW Tubman testified she had never sent Respondent-Father copies of the case plan herself but had asked Respondent-Father to provide her with updates on his progress monthly, which he did. She testified he provided her with proof of completion of parenting and anger management courses but not mental health or substance abuse courses; however, she knew by October 2024 that Respondent-Father had "taken drug education classes." She acknowledged Respondent-Father could not make much progress on the housing, employment, or visitation aspects of his case plan because of his incarceration but still he regularly communicated with SW Tubman, sent letters to the minor child, had consented to the minor child receiving certain recommended medical treatment, and would receive updates on the minor child from Paternal Grandmother.

On 10 February 2025, the trial court entered an Order terminating

Respondent-Father's parental rights in Lanya. The trial court concluded grounds existed to terminate Respondent-Father's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(6). Respondent-Father timely filed Notice of Appeal.

## Issue

The issue on appeal is whether the trial court's Findings of Fact are sufficient to support its Conclusion grounds existed to terminate Respondent-Father's parental rights in the juvenile under N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(6).

## Analysis

"A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage." *In re D.R.B.*, 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). "In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B-1111(a) exists." *Id.* "The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law." *Id.* Unchallenged findings of fact are binding on review. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted).

"If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen. Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental

rights is in the best interests of the child." *In re C.C.*, 173 N.C. App. 375, 380, 618

S.E.2d 813, 817 (2005). "The standard of review of the dispositional stage is whether

the trial court abused its discretion in terminating parental rights." *Id.* at 380-81,

618 S.E.2d at 817 (citation omitted). "An abuse of discretion results where the court's

ruling is manifestly unsupported by reason or is so arbitrary that it could not have

been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d

451, 455 (2015) (citation, quotation marks, and brackets omitted).

Respondent-Father challenges the trial court's Findings of Fact 25, 26, and 27,

which provide:

> 25. Respondent/father failed to sign a case plan; however, he was mailed copies of a case plan and has failed to complete said case plan.
>
> 26. Respondent/father has failed to complete a substance abuse and mental health assessment.
>
> 27. Respondent/father has participated in some substance abuse classes while incarcerated; however, [he] has not provided proof of completion to [DHHS]. Respondent/father testified that said substance abuse classes that he participated in discussed the effect that substance abuse usage has on the family, but did not provide any information on what if any treatment component was involved. Substance use was one of the reasons that the juvenile came into the custody of [DHHS].

Respondent-Father argues there is no evidence he failed to sign a case plan or that

he failed to complete said case plan, and there is no evidence a mental health

assessment was available to him. He also argues there is competent evidence he

completed a substance abuse program.

Our review of the Record shows SW Tubman testified Respondent-Father had not completed substance abuse or mental health courses; however, she did not testify that Respondent-Father "failed to sign a case plan[.]"[3]  Further, she knew Respondent-Father had taken a drug education course and the Record contains his certificate of completion.  And as to Respondent-Father's alleged failure to take a "mental health assessment," there is simply no Record evidence as to whether Respondent-Father had the ability to receive such an assessment in light of his incarceration.  Rather, the Record shows Respondent-Father was limited in the components of his case plan he could work on while incarcerated.  Thus, after careful review of the Record, we agree with Respondent-Father that the above Findings are not supported by clear, cogent, and convincing evidence and disregard them in the rest of our inquiry.[4]

Based on its Findings, the trial court concluded Respondent-Father's parental rights in Lanya were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(6).  A trial court may terminate a party's parental rights

---

[3] The assertion that Respondent-Father failed to sign a case plan appears to come from the testimony of SW Costa, who testified she mailed Respondent-Father correspondence regarding his case plan and never received any response.  Notably, SW Costa was assigned to the case between April 2019 and April 2022.  Accordingly, SW Costa could not have testified as to whether Respondent-Father had signed or made progress on his case plan at the time of the termination hearing in January 2025.

[4] Respondent-Father also challenges Findings of Fact 40 and 41.  These are Ultimate Findings which state Respondent-Father "failed to demonstrate the ability to meet the juvenile's basic needs" and "failed to demonstrate the ability to parent and protect the juvenile."  *See In re G.C.*, 384 N.C. 62, 65 n.3, 884 S.E.2d 658, 661 n.3 (2023) ("[A]n ultimate finding is a finding supported by other evidentiary facts reached by natural reasoning.").  Because of our ultimate disposition in this case, we need not reach the merits of these Findings.

under these sections upon a finding

> (a)(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
>
> (a)(2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
>
> . . . .
>
> (a)(6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (a)(6) (2023). "[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019) (citations omitted).

In support of its Conclusion grounds existed to terminate Respondent-Father's parental rights, the trial court made the following unchallenged Findings:

> 23. The Court has regularly reviewed Respondent/Father's

progress toward regaining custody of the juvenile, and the Court has never concluded at any hearing that Respondent/Father has made reasonable progress to warrant returning custody to Respondent/Father.

24. Respondent/Father has failed to correct the conditions that led to the removal of the juvenile from his custody, such that neglect would continue if the juvenile were returned to Respondent/Father's care. The neglect has continued through the date of the filing of the petition and is not due to the poverty of the Respondent/Father.

. . . .

28. Respondent/father has completed parenting classes while incarcerated.

29. Respondent/father has completed anger management while incarcerated.

30. Respondent/father is currently incarcerated for drug related charges.

31. Respondent/father has maintained regular contact with [DHHS].

32. Respondent/father has failed to obtain and maintain a safe, clean, and stable housing situation appropriate for the juvenile due to his incarceration.

33. Respondent/father has failed to maintain employment or sufficient financial resources to support the juvenile due to his incarceration.

34. Respondent/father has failed to attend visitations with the juvenile due to his incarceration. Respondent/father has never been ordered unsupervised visitation and was arrested shortly after the juvenile was placed in [DHHS] custody.

35. Respondent/father has failed to refrain from criminal activity. Respondent/father pled guilty to federal charges of conspiracy to

distribute methamphetamine, possession with intent to distribute methamphetamine, and possession of a firearm by felon. Respondent/father was sentenced to thirty-three (33) years in prison.

36. Respondent/father testified that he currently has appealed his sentence, however, even if his sentence is reduced, he still would serve 10-11 years. The juvenile is entitled to permanence now and not 10-11 years later.

37. Respondent/father sends the juvenile birthday cards and letters at least monthly, if not more, and has done so for the past two (2) years.

. . . .

39. For a significant portion of this case, Respondent/father was held in the Gaston County Jail with a federal hold, awaiting disposition of federal charges. He was limited in what services he could access while incarcerated at the Gaston County Jail. Respondent/father has utilized services available to him since sentencing and being [placed] at FCI-Edgefield.

Respondent-Father contends the trial court erred in concluding grounds existed to terminate his parental rights under Sections 7B-1111(a)(1) and (a)(2) because it inappropriately relied on his incarceration to terminate his parental rights in the minor child despite doing "everything he could to stay involved in his daughter's life and to work with [DHHS]." This Court has consistently affirmed that " '[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights.' " *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005) (quoting *In re Yocum*, 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405 (2003)). Likewise, "[w]here a respondent has been and continues to be incarcerated, our courts

have prohibited termination of parental rights solely on that factor." *In re D.R.B.*, 182 N.C. App. at 738, 643 S.E.2d at 81 (citations omitted).

We agree the above Findings tend to suggest the trial court based its decision to terminate Respondent-Father's parental rights almost entirely on Respondent-Father's incarceration. Indeed, the trial court found Respondent-Father had failed to support or provide for the minor child expressly "due to his incarceration." Similarly, the trial court acknowledged Respondent-Father has been "limited in what services he could access while incarcerated at Gaston County Jail . . . [f]or a significant portion of this case[.]"

Moreover, the trial court also found Respondent-Father has maintained contact with DHHS; completed parenting and anger management classes as ordered in his case plan; and, although he could not visit with the minor child, he sends her "birthday cards and letters at least monthly, if not more, and has done so for the past two (2) years." These Findings reflect Respondent-Father's continued involvement with the minor child notwithstanding his incarceration. Likewise, SW Tubman's testimony tended to affirm that since his transfer to federal prison, Respondent-Father has made increased progress on his case plan.

Thus, the trial court's Findings are insufficient to demonstrate he neglected the juvenile under Section 7B-1111(a)(1) or "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been

made in correcting those conditions which led to the removal of the juvenile[ ]" under Section 7B-1111(a)(2) because they impermissibly indicate Respondent-Father has neglected the juvenile solely "due to his incarceration."

However, the Findings tend to support a determination that Respondent-Father is incapable of providing for the proper care and supervision of the juvenile and that there is a reasonable probability the incapability will continue for the foreseeable future. *See* N.C. Gen. Stat. § 7B-1111(a)(6) (2023). In *In re K.B.C.*, the respondent-parent argued the trial court erroneously terminated his parental rights under Section 7B-1111(a)(6) based entirely on his incarceration. 295 N.C. App. 619, 906 S.E.2d 840 (2024). This Court disagreed, noting "the trial court considered, beyond the fact of Respondent-Father's incarceration, the substantial length of Respondent-Father's sentence, its effect upon the minor children, the minor children's physical and emotional well-being, and Respondent-Father's lack of appropriate alternative placements for the children." *Id.* at 630, 906 S.E.2d at 847. We held that consideration of a parent's incarceration in this way is consistent with our precedent. *Id.* at 630, 906 S.E.2d at 848. In reaching this conclusion, we considered our Supreme Court's holding in *In re A.L.S.*, 375 N.C. 708, 851 S.E.2d 22 (2020). There, the respondent-parent was incarcerated during the proceedings and faced twenty-two to forty-two additional months of imprisonment. *Id.* at 714, 851 S.E.2d at 27. The Court explained:

> The fact that respondent-mother faces an extended period of

> incarceration . . . provides ample support for the trial court's determination that she was incapable of providing for the proper care and supervision of the children and that there was a reasonable probability that her incapability would continue for the foreseeable future.

*Id.* (citations omitted). "Likewise, this Court has also found extended periods of incarceration can render a parent incapable of providing sufficient care and supervision of a minor child." *In re K.B.C.*, 295 N.C. App. at 630, 906 S.E.2d at 848 (citing *In re L.R.S.*, 237 N.C. App. 16, 21, 764 S.E.2d 908, 911 (2014); *In re N.T.U.*, 234 N.C. App. 722, 735, 760 S.E.2d 49, 58 (2014)).

Here, the trial court found Respondent-Father faces a minimum of ten years of incarceration, if not longer. Thus, under our precedent, the trial court's Findings support the determination Respondent-Father is incapable of providing for the proper care and supervision of the juvenile and that there is a reasonable probability the incapability will continue for the foreseeable future. *See In re A.L.S.*, 375 N.C. at 714, 851 S.E.2d at 27 (citations omitted).

However, because the trial court did not make the necessary findings about Respondent-Father's alternative child care arrangements for the juvenile, we must remand the case to the trial court for such a determination. "[T]he trial court's findings regarding [termination under Section 7B-1111(a)(6)] 'must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " *In re K.R.C.*, 374 N.C. 849, 859, 845 S.E.2d 56, 63 (2020) (quoting *In re L.R.S.*, 237 N.C. App. at 19, 764 S.E.2d at 910).

Importantly, the findings must address these two elements *at the time of the termination hearing.* *See In re Z.G.J.*, 378 N.C. 500, 511, 862 S.E.2d 180, 189 (2021) ("[A]n adjudication of dependency as a ground for termination under Section (a)(6) must be based on an examination of the parent's ability to care for and supervise their child at the time of the adjudication hearing." (citing *In re C.L.H.*, 376 N.C. 614, 619-20, 853 S.E.2d 434, 439 (2021))).

Here, the trial court made the Ultimate Finding that Respondent-Father lacked an appropriate alternative child care arrangement but did not find any evidentiary facts in support of this determination. Although the trial court's Order incorporates the findings and conclusions from the 2019 juvenile adjudication and disposition orders, those determinations were approximately six years old and do not necessarily reflect Respondent-Father's circumstances at the time of the termination hearing. Thus, the trial court's Findings are insufficient to support its Conclusion that grounds existed to terminate Respondent-Father's parental rights in Lanya under N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(6). Therefore, the trial court erred by concluding grounds existed to terminate Respondent-Father's parental rights.

Respondent-Father argues we should remand this matter to the trial court to dismiss the Petition. However, based on our review of the Record, we cannot say "the evidentiary record is so lacking that it cannot support any appropriate findings on remand." *In re A.J.*, 386 N.C. 409, 412, 904 S.E.2d 707, 712 (2024) (citation omitted).

Consequently, we remand this matter to the trial court for further proceedings.

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate the trial court's Order terminating Respondent-Father's parental rights in Lanya and remand for further proceedings, including the entry of a new order containing findings of fact addressing whether Respondent-Father has an appropriate alternative child care arrangement for the juvenile. "The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so." *In re C.L.H.*, 376 N.C. at 625, 853 S.E.2d at 442 (citation omitted).

VACATED AND REMANDED.

Judges TYSON and ZACHARY concur.